IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| TONETTE J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. CBD-18-1047 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Acting Commissioner, | ) |
| Social Security Administration | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Tonette J. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Commissioner denied Plaintiff's claim for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 15, and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 16. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion and **DENIES** Commissioner's Motion, but **REVERSES** and **REMANDS** the Administrative Law Judge's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

## I. Procedural Background

On April 21, 2014, Plaintiff filed for SSI under Title XVI, alleging disability beginning November 1, 2012. R. 10, 216-25. Plaintiff alleged disability due to "bi-polar disorder, panic disorder, asthma, agoraphobia; [and a history] of ovarian cancer." R. 59. Plaintiff's claims were initially denied on July 14, 2014, and upon reconsideration on January 16, 2015. R. 10, 59-64, 66-68. An administrative hearing was held on May 23, 2016, at which Plaintiff was granted an adjournment to obtain representation. R. 10, 28-31. Plaintiff later requested a second adjournment, which was granted on October 24, 2016. R. 10, 170-71. Ultimately, a second hearing was held on February 27, 2017, with Plaintiff's attorney present. R. 10, 178, 183, 201, 204-09. At that hearing, Plaintiff amended her alleged onset date to be May 31, 2016. R. 10, 36. On April 25, 2017, Plaintiff's claim was denied. R. 10-22. Plaintiff sought review by the Appeals Council, which concluded on February 22, 2018, that there was no basis for granting the Request for Review. R. 1-4.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the administrative law judge ("ALJ") "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary

result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a)

(2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 416.945(b)-(c) (2012). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 416.945(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities,

observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 11-22. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 21, 2014, the date of her application for SSI. R. 12. At step two, under 20 C.F.R. § 416.920(c), the ALJ determined that Plaintiff has the following severe impairments: "bipolar disorder, panic disorder, post-traumatic stress disorder, and opiate dependence." R. 12. The ALJ stated that these impairments were "severe" as they "impose more than minimal functional limitations on the claimant's ability to perform basic work activities and have lasted or are expected to last for more than twelve months." R. 12. In step three, the ALJ determined that Plaintiff "does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926; SSR 17-2p)." R. 13. At step four, the ALJ determined that Plaintiff has the RFC to:

> [P]erform light work as defined in 20 CFR 416.967(b) except she can frequently climb ramps, stairs, and kneel. She can occasionally climb ladders, ropes, or scaffolds. She can occasionally push or pull foot controls with the right lower extremity. She requires the opportunity to sit for a minute or two after standing between 30 to 60 minutes. Mentally, she is capable of performing simple, routine, and repetitive tasks. She can have occasional contact with coworkers and supervisors, but no contact with the public.

R. 16.  At step five, the ALJ determined that Plaintiff was not capable of performing any of her past relevant work.  R. 20.  However, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  R. 20.  The ALJ relied upon the testimony of a vocational expert when making this determination.  R. 20-21.  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  R. 21-22.

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in her favor alleging several legal errors and ways in which the ALJ's decision was not based on substantial evidence.  Mem. in Supp. of Pl.'s Mot. for Summary J. ("Pl's Mem.") 5-16.  For the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** the ALJ's decision, and **REMANDS** the matter for further proceedings.

### A. *The RFC fails to sufficiently account for Plaintiff's moderate limitations in concentration, persistence, or pace as it fails to address Plaintiff's ability to sustain the identified RFC for a full workday.*

Plaintiff argues the RFC limitation to "simple, routine and repetitive tasks" runs afoul of the Fourth Circuit's explicit holding in *Mascio* as it fails to reconcile the ALJ's finding of her moderate limitations with maintaining concentration, persistence, or pace with the minimal limitations included in the RFC.  Pl.'s Mem. 11-12 (citing *Mascio v. Colvin,* 780 F.3d 632 (4th Cir. 2015)).  Plaintiff specifically argues the ALJ erred in failing to include a durational limitation in the RFC assessment or to provide an explanation for why one was not necessary.  Pl.'s Mem. 12.  Commissioner counters that the ALJ did in fact meet the requirements of *Mascio* as he provided an explanation for why Plaintiff's moderate limitations in concentration, persistence, or pace are sufficiently accounted for by the RFC limitations.  Mem. of Law in Supp. of Def.'s Mot. for Summary J. ("Comm'r's Mem.") 10-12.  Commissioner asserts that the

6

ALJ implicitly addressed whether Plaintiff needed any durational limitations as an "RFC assessment reflects the claimant's capacity for work activity on a 'regular and continuing basis.'" Comm'r's Mem. 12-13 (citing 20 C.F.R. § 416.945).

In *Mascio*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or pace beyond limiting a claimant to performing only "simple, routine tasks or unskilled work." *Mascio,* 780 F.3d at 638. This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). To satisfy this requirement, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted)).[1] This Court has previously held

---

[1] The functional area of concentration, persistence, or pace, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3) (2012). Since *Mascio*, courts have reviewed various ALJs' attempts to include corresponding limitations in their RFC assessments for moderate limitations in this functional area. *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug. 16, 2018) (holding limitations for interactions with other individuals do not address concentration, persistence, or pace; rather they address social functioning); *McDonald v. Comm'r*, Civ. No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the claimant could] perform 'simple, routine,

7

that—in addition to determining the work functions a claimant is able to do—*Mascio* requires an ALJ to either include an explicit limitation addressing a claimant's ability to sustain those functions throughout a full workday or a sufficiently clear explanation as to why a durational limitation is not necessary.[2]

Here, Plaintiff was found to have moderate limitations in "concentrating, persisting, or maintaining pace." R. 14. The ALJ specifically noted at step three that Plaintiff did not have a "serious limitation in the abilities to focus attention or stay on task, given [Plaintiff's] improvement with treatment and lack of complaints with completing tasks on an ongoing basis." R. 15. In assessing Plaintiff's RFC, the ALJ determined that, "[m]entally, [Plaintiff] is capable of performing simple, routine, and repetitive tasks." R. 16. After reviewing and summarizing the evidence in the record, the ALJ stated, "I have found [Plaintiff] would be limited to low

---

and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision' " was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, Civ. No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding that when a RFC includes durational limitations an ALJ must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how limiting someone to breaks every two hours "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements); *Henig v. Colvin*, Civ. No. TMD-13-1623, 2015 WL 5081619, at *12 (D. Md. Aug. 26, 2015) (listing cases) (finding the ALJ's determination that a claimant should be excluded from "work involving significant stress, such as production-line type work" sufficient to meet *Mascio* requirements for corresponding limitations for moderate difficulties in concentration, persistence, or pace).

[2] *See, e.g.*, *Parker v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-18-0554, 2019 WL 247539, at *7 (D. Md. Jan. 17, 2019) ("Although the ALJ determined the functions she believed [the claimant] could perform, she failed to discuss [the claimant's] ability to perform those functions throughout a full workday as required by *Mascio*."); *Folsom v. Berryhill*, Civ. No. TMD 16-1681, 2017 WL 4354875, at *3 (D. Md. Sept. 30, 2017) (remanding the case as the ALJ "did not explain how [the evidence] demonstrated that [the claimant] could persist through an eight-hour workday"); *Miles v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-16-1397, 2016 WL 6901985, at *2 (D. Md. Nov. 23, 2016) ("There is no corresponding restriction for the finding of moderate difficulties in concentration, persistence, or pace, such that it addresses [the claimant's] ability to sustain work throughout an eight-hour workday.").

8

stress, unskilled work, with limited social interactions, but find the evidence does not support any additional limitations." R. 20. While this addresses what type of work functions Plaintiff could sustain, the ALJ did not explicitly address whether Plaintiff could sustain those work functions for a full workday. Further, a review the evidence he cited indicates the ALJ was aware that Plaintiff's medicine made her drowsy and that she suffered at times from panic attacks. R. 16-18. The ALJ cites to treatment notes and appears to dismiss Plaintiff's complaints of drowsiness as an infrequent issue or the result of poorly timing the dosages. R. 19. However, in these same treatment notes, Plaintiff also discusses her overall experiences with medications she is taking. R. 487. Plaintiff reports that certain medications are not "lasting the whole day." R. 487. Therefore, in addition to not explicitly addressing whether Plaintiff would be able to maintain persistence or pace throughout a full workday, there is evidence that the very medications that permit her to function might not last a full workday. Accordingly, remand is warranted on this issue and the ALJ is ordered to provide an assessment as to whether Plaintiff would be able to sustain the RFC over a full 8-hour workday.

> **B. The ALJ properly assessed the medical opinions in evidence by providing both the weight he afforded to each opinion as well as a sufficient explanation for his decision, thus permitting judicial review.**

Plaintiff argues that the ALJ failed to provide sufficient explanations for the weights he assigned to the medical opinions included in the record. Pl.'s Mem. 9. Specifically, Plaintiff argues the ALJ used "undefined adjectives (little and some) in assigning weight to every single medical source RFC assessment of record" but "[a]t no point . . . does the ALJ ever define these adjectives nor does he disclose . . . what proportion of weight was assigned to the various medical source statements." Pl.'s Mem. 9. Commissioner counters that Plaintiff appears to focus on the ALJ's choice of words and ignores the fact that the ALJ provided additional

9

explanations within his decision for the weight he afforded each opinion. Comm'r's Mem. 6-7. Commissioner argues the Court should decline to adopt a *per se* rule that such terms require remand and instead "focus on the ALJ's explanation as a whole to understand how the ALJ evaluated the opinion evidence in question." Comm'r's Mem. 7-8. According to Commissioner, the ALJ in this case did provide such explanations for his determinations of weight. Comm'r Mem. 8. For the reasons that follow, the Court agrees with Commissioner on this issue.

An ALJ has a duty to explain her decision so as to enable meaningful judicial review. *See Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (citing *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)); *see also Murphy*, 810 F.2d at 437 (holding that an ALJ failed to "explicitly indicate" the weight he afforded two medical opinions when he failed to provide the reasons for why he credited one doctor's opinion over another doctor's conflicting opinion); *Durham v. Apfel*, 225 F.3d 653, 2000 WL 1033060, at *5 (4th Cir. 2000) (*per curiam*) (citing *Gordon*, 725 F.2d at 236) (stating an ALJ must "analyze[] all evidence and [ ] sufficiently explain[ ] the weight he has given to obviously probative exhibits" or it prevents judicial review). Additionally, "the ALJ is required to give 'controlling weight' to opinions proffered by a claimant's treating physician so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (citing to 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)); *see also Sharp v. Colvin*, 660 F. App'x 251, 256 (4th Cir. 2016) (same). An ALJ can assign a lesser degree of weight to a treating physician's medical opinion

but must provide an explanation for this decision and support it with evidence in the record. *See Lewis*, 858 F.3d at 867-68 (finding the ALJ's rejection of the treating physician's opinion as "perfunctory" as his explanation "span[ned] only four lines and overlook[ed] critical aspects of [the plaintiff's medical treatment history]"). This Court has not found terms such as "little" or "some" to be *per se* insufficient so long as there is some explanation given as to how or why the ALJ assigned that degree of weight. *See, e.g.*, *Lacek v. Colvin*, Civ. A. No. CBD-13-2046, 2014 WL 2865992 (D. Md. June 23, 2014). In *Lacek*, the ALJ only assigned weight to three out of the seventeen opinions in the record, "and for those three opinions he merely stated that he gave them 'some' or 'very minimal' weight." *Id.* at *7. This Court determined that this "glaring lack of substance and weighing of the opinion evidence" left it "without an adequate understanding of how the ALJ reached essential decisions." *Id.* In remanding the case back for further proceedings, this Court held that, "[a]lthough 'administrative verbosity' is not required, the ALJ must conduct analysis and an explanation that allows a reviewing Court to understand the conclusions he reached and why he reached them." *Id.* at *8.

Here, the ALJ reviewed several medical opinions that were included in Plaintiff's record and afforded them varying weights ranging from little to some. R. 19. For each opinion, the ALJ also stated specific reasons for why these weights were given. R. 19 (noting several providers' opinions did not accord with their treatment notes, offered "no rationale" for their determinations, or gave opinions as to overall disability that were reserved to the ALJ). In one instance, the ALJ gave Plaintiff's treating physician's opinion "no more than some weight." R. 19. However, the ALJ stated this was because the doctor's own notes did not support the "extreme [physical] limitations" the doctor opined Plaintiff suffered. R. 19. This Court has deemed such reasoning to be a sufficient explanation for assigning less than controlling weight to

11

a treating physician's opinion. *See, e.g., Sharp*, 660 F. App'x at 257 (finding the ALJ's reasoning that "the claimant's reported limitations were not supported by [the physician's] office notes" was a sufficient explanation for the assignment of "little weight"). Accordingly, remand is not necessary on this issue.

> ### C. *The ALJ failed to obtain a sufficient explanation from the VE as to whether there were sufficient jobs in the national economy that Plaintiff could perform in light of the admitted conflicts between her testimony and the DOT.*

Plaintiff argues that the ALJ failed to obtain an acknowledgement of whether there was any conflict between her testimony and the DOT as they related to the jobs identified at step five. Pl.'s Mem. 13. Plaintiff asserts this error was prejudicial to her as her RFC limitations for social function would preclude her from doing any of the jobs identified by the ALJ as they are defined in DOT, thus undermining the ALJ's finding that she was not disabled. Pl.'s Mem. 14. Commissioner counters that the ALJ is only required to ask the VE if the evidence conflicts with the DOT and, if it appears that it does, to "obtain a reasonable explanation for the apparent conflict." Comm'r's Mem. 14. Commissioner asserts that the ALJ in this case did comply with this responsibility. Comm'r's Mem. 14. Commissioner further argues that there is no apparent conflict between the VE's testimony and the DOT. Comm'r's Mem. 14-15.

As previously stated, at step five of the analysis the ALJ must determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). To make this determination, an ALJ relies primarily on the *Dictionary of Occupational Titles* (DOT).[3] *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)).

---

[3] The *Dictionary of Occupational Titles,* and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (hereinafter, "DOT" refers to both documents), are Social Security Administration resources that list occupations existing in

> The ALJ "may also use" a [VE] to address complex aspects of the employment determination, including the [VE's] observations of what a particular job requires in practice or the availability of given positions in the national economy. Because the [VE's] testimony can sometimes conflict with the [DOT], the Social Security Administration has promulgated a multi-page, formal ruling to "clarif[y the] standards for the use of [VEs]" at ALJ hearings. The Ruling requires that the ALJ "inquire, on the record, . . . whether" the [VE's] testimony "conflict[s]" with the [DOT], and also requires that the ALJ "elicit a reasonable explanation for" and "resolve" conflicts between the [VE's] testimony and the [DOT]. The ALJ must, by determining if the [VE's] explanation is "reasonable," resolve conflicts "before relying on the [VE's] evidence to support a determination or decision about whether the claimant is disabled."

*Id.* at 207-08 (citing SSR 00-4p, 2000 WL 1898704 at *1-2). However, the Fourth Circuit

> [E]xpressly declined to expand the ALJ's duty to include inquiry as to "all *possible* conflicts," because it would impermissibly "require the ALJ to do more than simply compare the *express language* of the [DOT] and the vocational expert's testimony, and would allow the claimant to nitpick an ALJ's or expert's word choice on appeal."

*Eddie v. Berryhill*, No. 5:16-CV-801-D, 2017 WL 4002147, at *6 (E.D.N.C. Aug. 24, 2017), *report and recommendation adopted*, No. 5:16-CV-801-D, 2017 WL 3995813 (E.D.N.C. Sept. 11, 2017) (citing *Pearson*, 810 F.3d at 209 (emphasis added)). Rather, the Fourth Circuit limited the ALJ's duty to identifying "apparent" conflicts, which it held to mean "that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]. For the Ruling [SSR 00-4p] explains that '[i]f the [VE]'s . . . evidence *appears to conflict* with the [DOT], the adjudicator will obtain a reasonable explanation for the *apparent* conflict.'" *Pearson*, 810 F.3d at 209 (quoting SSR 00-04p, 2000 WL 1898704) (emphasis in original).

---

the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993).

For example, the ALJ determined in *Pearson* that the claimant's "nondominate arm could only occasionally reach upward." *Id.* at 210. However, the VE testified the claimant could perform three occupations where the DOT listings included "*frequent* reaching as a requirement." *Id.* (emphasis original) (citing DOT listings). The *Pearson* court determined that because the DOT's "broad definition of 'reaching' means that [the occupations identified by the VE] certainly *may* require [bilateral overhead] reaching" there was an apparent conflict between the VE's testimony and the DOT. *Id.* at 211. The Court concluded that it was the "purview of the ALJ [and not the Court] to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching." *Id.* The Court further explained that such conflicts do not necessarily mean a claimant must be found unable to perform an identified job. *Id.* Rather, it meant the ALJ must directly address the conflict with the aid of the VE and determine whether there are "a significant number of these positions" that do not require the identified limitation so that the ALJ "can properly find [the claimant] not disabled." *Id.* (noting resolution of the conflict would involve testimony from the VE as to specific numbers of positions available in light of additional restrictions); *see also Lawson v. Berryhill*, Civ. No. TJS-17-0486, 2018 WL 1135641, at *4 (D. Md. Mar. 1, 2018) (reversing the ALJ's decision as not based on sufficient evidence in part due to the fact that, after the VE testified how many positions exist nationwide in identified occupations, the ALJ "failed to specify how many positions exist in the local and national economy that could accommodate individuals such as" the plaintiff); *Gautreau v. Colvin*, Civ. No. 2:15CV81, 2016 WL 1314314, at *12 (E.D. Va. Feb. 26, 2016), *report and recommendation adopted*, A. No. 2:15CV81, 2016 WL 1298122 (E.D. Va. Mar. 31, 2016), *aff'd sub nom. Gautreau v. Berryhill*, 685 F. App'x 260 (4th Cir. 2017) (finding the VE's testimony provided substantial evidence to support the ALJ's

decision where the VE testified that there was a conflict between the DOT and her testimony for a position she identified but also "testified that she drastically reduced the number of available . . . positions . . . to account for the limits imposed by [the claimant's RFC]").

Here, the ALJ found Plaintiff had moderate limitations with "interacting with others." R. 14. The ALJ summarized that Plaintiff's "overall symptoms, while reflecting some anxiety and irritability at times, were generally controlled with medication and are not consistent with a serious limitation" on social interactions. R. 14. Subsequently, the ALJ included a limitation in Plaintiff's RFC that she have only "occasional contact with coworkers and supervisors, but no contact with the public." R. 16. During the hearing, the ALJ posed a hypothetical to the VE that comported with the final RFC determination he made. R. 54. This included a limitation to only "occasional contact with coworkers and supervisors, but no contact with the public." R. 54. The VE testified that Plaintiff could perform the jobs of "bench packagers," "sorter," and "inspection." R. 21, 54-55. She further testified that these jobs existed in numbers ranging between 285,000 and 320,000. R. 54-55. After the VE testified in response to both the ALJ's questions and Plaintiff's counsel's questions, the ALJ specifically asked whether the VE's testimony was "in accordance with the DOT." R. 56. The VE responded:

> Other than the sitting and the standing, as well as the non-exertional limitations and the absenteeism rates, as well as time off-task, which is not addressed by the DOT or companion publications; therefore it would be based on my education, training, experience performing direct job placement services and labor market research consistently for the last 22 years.

R. 57. In his written decision, the ALJ acknowledged that there were inconsistencies between the VE's testimony and the DOT, but found the VE's explanation that—"based on her undisputed training, education, and experience"—Plaintiff's limitations would not preclude her from a significant number of positions to be reasonable. R. 21 (citing SSR 00-4p). Further, the

15

DOT listings for these jobs do not include any mention of public interactions nor do they appear to be positions that would likely involve such interactions.[4] However, while the VE did give an estimate of the number of positions available nationwide for each of the jobs the VE identified, there is no indication that someone with Plaintiff's specific limitations would qualify for every one of the positions. *See Gautreau*, 2016 WL 1314314 at *12. Accordingly, remand is warranted on this issue. The ALJ is directed to not only conduct the two-step inquiry outlines in *Pearson*, he should also inquire whether the number of jobs available in the national economy are ones that Plaintiff would qualify for given her RFC. *See Pearson*, 810 F.3d at 211.

---

[4] A "bench packer" is cited to a position also known as a "bin filler" which is describe as involving the following tasks: "Packs tobacco filler leaves in storage bin, positioning leaves in rows to prevent breakage. Covers leaves with rubber sheet and closes bin." DICOT 922.687-010 (G.P.O.), 1991 WL 688120. A "sorter" is described as conducting the following tasks:

> Sorts agricultural produce, such as bulbs, fruits, nuts, and vegetables: Segregates produce on conveyor belt or table, working as crewmember, according to grade, color, and size, and places produce in containers or on designated conveyors. Discards cull (inferior or defective) items and foreign matter. Bunches, ties, and trims produce, such as asparagus, carrots, celery, and radishes. Picks out choice produce to be used as cappers (top layers on marketing containers). Packs produce in boxes, barrels, baskets, or crates for storage or shipment.

DICOT 529.687-186 (G.P.O.), 1991 WL 674781. Finally, "inspection" is cited to a position as an "inspector," which is described as conducting the following tasks:

> Inspects battery containers to determine if finishing and dimensional specifications are met: Examines battery containers for surface defects, such as cracks and damaged terminal posts. Verifies dimensional specifications of battery containers, using templates or other measuring devices. Places covers over cell partitions of battery containers to determine if spacing requirements are met.

DICOT 727.687-066 (G.P.O.), 1991 WL 679675.

### D. As this matter is being remanded, the issue concerning the requested evidence from Plaintiff's earlier claim is rendered moot.

Plaintiff argues the ALJ failed to comply with statutory regulations by failing to provide her with a copy of the evidence from her 2008 claim despite her request that it be included. Pl.'s Mem. 15 (citing "20 C.F.R. 912(a)-(b)"). Plaintiff asserts this evidence was "absolutely critical in light of the fact that [the Commissioner] saw it fit to obtain no medical records at the initial decision level, and only one medical document at the reconsideration level." Pl.'s Mem. 15. Commissioner presents several arguments to counter Plaintiff's assertions on this issue. First, Commissioner points out that the section of the regulation at issue was deleted in 2017 when the new rules governing how ALJ were to evaluate evidence were issued. Comm'r's Mem. 16. Commissioner asserts that these new rules apply to the ALJ's decision in Plaintiff's case as the decision was issued after the new rules came into effect. Comm'r's Mem. 6. Second, Commissioner argues that the ALJ is only required to "develop [Plaintiff's] complete medical history for at least the last 12 months preceding the month in which the application is filed 'unless there is reason to believe that development of an earlier period is necessary.'" Comm'r's Mem. 16 (citing "20 C.F.R. § 416.912(d) (prior); 20 C.F.R. § 416.912(b)(1) (current)"). Third, Commissioner points out that Plaintiff failed to raise the missing evidence at the hearing despite having legal representation. Comm'r's Mem. 16-17. And finally, Commissioner asserts Plaintiff has not shown she suffered any prejudice resulting from the failure to include these records. Comm'r's Mem. 17.

"Pursuant to 20 C.F.R. § 416.912(d), the ALJ must develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant filed his application." *Bush v. Colvin*, No. CV 1:14-4917-RMG-SVH, 2016 WL 1238006, at *11 (D.S.C. Mar. 22, 2016), report and recommendation adopted, No. CV 1:14-4917-RMG, 2016 WL

17

1273494 (D.S.C. Mar. 29, 2016). Accordingly, the ALJ in this matter was only required to develop Plaintiff's medical history as far back as April 2013. Further, Plaintiff has failed to establish how the ALJ's alleged failure to obtain these documents prejudiced her. "Prejudice to the claimant is established where 'the [Commissioner's] decision might reasonably have been different had that evidence been before her when her decision was rendered.'" *Smith v. Barnhart*, 395 F. Supp. 2d 298, 305 (E.D.N.C. 2005) (quoting *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir.1980) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979)) (internal quotations omitted). Here, Plaintiff does not explain how the evidence included in the 2008 claim would change the outcome of her current claim where the period at issue began in 2016. Plaintiff seems to allude to the fact that the state agency assessments of her RFC might have provided support for a different finding as to her limitations but gives no specifics. Pl.'s Mem. 15. The Court also notes that Plaintiff has been represented by the same counsel from the hearing stage through this appeal. Nowhere in the hearing transcript does Plaintiff's counsel appear to have raised the issue of the missing information to the attention of the ALJ. *See* R. 35-36. However, the Court is troubled by the possibility that a request submitted to Commissioner for documents in Commissioner's possession might have been ignored or misplaced. As this matter is being remanded for other reasons, any harm that may have resulted from the ALJ's alleged failure to obtain these documents is rendered moot. For future proceedings, the ALJ is advised to explicitly address any requests for evidence Commissioner might receive and the reasoning for why he may have declined to comply with them.

## IV.     Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** the ALJ's decision, and **REMANDS** this matter for further proceedings in accordance with the instructions articulated in these findings and in this Court's prior rulings.


March 22, 2019                                                                                              /s/
                                                                                        Charles B. Day
                                                                                        United States Magistrate Judge


CBD/clc